**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:21-cr-00643-(CKK)** |
| **v.** | : | |
| | : | |
| **MEGHAN RUTLEDGE,** | : | |
| | : | |
| | : | |
| **Defendant** | : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Meghan Rutledge to 90 days home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution.

**I.      Introduction**

Defendant Megan Rutledge (Rutledge), a 29-year-old, unemployed resident of Chesapeake, Virginia, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars' in losses.

Defendant Rutledge pleaded guilty to one count of violating 40 U.S.C. § 5104(e)(2)(G). As explained herein, a sentence of 90 days home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution is appropriate in this case because Rutledge: (1) was aware of the violence and property destruction at the Capitol, but still breached the

building; 2) celebrated breaching the Capitol building on social media; 3) breached the Capitol with likeminded rioters and admits that she was "sympathetic to those surrounding me who questioned the results of the election"; (4) used social media to spread false information that the attack was done by Antifa; and (5) has shown no remorse for her actions.

The Court must also consider that Rutledge's conduct on January 6, like the conduct of hundreds of other rioters, took place in the context of a large and violent riot that relied on numbers to overwhelm police officers who tried to prevent a breach of the Capitol Building, and disrupt the proceedings. Here, because of Rutledge's celebration of the riot, spreading of false information in social media, and her lack of remorse, a sentence of probation is not warranted. The facts and circumstances of Rutledge's crime instead support a sentence of 90 days home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution.

## II.     Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 21 (Statement of Offense), at 1-7.

### *Defendant Rutledge's Role in the January 6, 2021 Attack on the Capitol*

On January 6, 2021, Rutledge, whose husband is a police officer, traveled with her father Willard Bostic, Jr. (W. Bostic) and Karegan Bostic (K. Bostic)[1] (collectively "the Defendants")

---

[1] On March 9, 2023, this Court sentenced Defendant W. Bostic to 90 days of GPS monitoring (home-detention) as part of a 36-month term of probation; 40 hours of community service, payment of $500 restitution; and payment of the $10 special assessment for the offense of conviction. Also, on March 9, 2023, this Court sentenced Defendant K. Bostic to 30 days of GPS monitoring (home-detention) as part of a 36-month term of probation; payment of $500 restitution; and payment of the $10 special assessment for the offense of conviction. *See* March 9, 2023, Minute Entries.

from Chesapeake, Virginia to Washington, D.C., via automobile. ECF 72, Statement of Offense, ¶ 8. Just before parking in Washington, D.C., Rutledge texted a friend to tell the purpose of the family's trip, stating "I wish you were here too. We haven't even parked yet . I'm going to add you on snap chat so you can be apart of it with me and I'll probably be FaceTiming you. If trump wins we will come back for inauguration". They thought that the events of January 6th could result in former President Trump becoming the next president. The Defendants then attended the "SAVE AMERICA RALLY" at the ellipse where former President Trump spoke. *Id*. at ¶ 9.

After attending the rally, the Defendants walked to the Capitol with a massive crowd of people who waved flags and chanted. The Defendants were captured in an open-sources video marching to the Capitol. *See* https://web.archive.org/web/submit?url=https://video.parler.com/y4/K5/y4K5OwDPuupA.mp4



***Image 1 depicts defendants W. Bostic (circled in red), K. Bostic (circled in yellow), and Rutledge (circled in blue) marching to the Capitol Building in a video located at***
https://web.archive.org/web/submit?url=https://video.parler.com/y4/K5/y4K5OwDPuupA.mp4

By 2:00 PM, rioters had forced their way through the barricades on Capitol grounds, and the police were forced to retreat while the crowd advanced to the exterior façade of the building. ECF 68, Statement of Offense, ¶ 5. The Defendants advanced to the Upper West Terrace of the Capitol and stood on the stairs of the Capitol with other rioters who had overrun this restricted area. In her plea, Rutledge admitted that the defendants "were part of the mob that had gathered on the West Front at the inaugural stage and Upper West Terrace." *Id*. at 10. Rutledge also admitted that while there, she "took a picture of the mob that assembled on the Northwest stairs." *Id*. The trio also climbed the scaffolding that was set up at the Inaugural stage, which is adjacent to the Northwest stairs where rioters overran the police to advance to the Upper West Terrace.

Rutledge also took pictures of W. Bostic in the scaffolding and of rioters as they advanced up the Northwest stairs.



***Image 2 depicts defendants W. Bostic (circled in red), K. Bostic (circled in yellow), and Rutledge (circled in blue) on the West Front of the Capitol.***

From this vantage point, the Defendants surely had a bird's eye view of rioters who fought the police on the Northwest stairs.

**Image 3**          **Image 4**          **Image 5**



***Image 3 is a picture Rutledge took of W. Bostic (circled in red) on the Inaugural Stage scaffolding at 2:24 PM  Image 4 is a picture Rutledge took of the same area at 2:25 PM capturing a view of the West Front shortly after rioters overran the police there, and Image 5 is a photo of rioters advancing up the Northwest stairs after they overran the police there.***

Besides the view from the scaffolding and the Northwest stairs of other rioters, there were other obvious signs not to enter the Capitol Building. Before breaching the Capitol, rioters were standing on ledges of the building directly above the Defendants.



***Image 6 is a photo taken at approximately 2:35 PM by Rutledge of rioters (circled in green) on the Capitol Building.***

In fact, on the day of the riot, Rutledge affirmed in a text to her friend that she and her sister K. Bostic (and presumably W. Bostic since they were together) witnessed flash bangs, rioters who "broke windows to get inside of the capital [sic] building", and that they were teargassed with others. Rutledge recounted the following:

> I'm so irritated bc I said to my sister when we began approaching the capitol building and everyone started climbing over the wall that they were going to bastardize this on the news ... and sure enough they did ... Everyone was very kind and helpful to each other especially when it came to helping out the elderly who were tear gassed and flash banged amongst the crowds. The camaraderie was amazing however the media is only showing tiny clips of what they want you to see . When walking back to the car we could hear everyone's conversations around us saying the same thing about how there was absolutely **no violence other than when they broke the windows to get inside of the capital building** but no violence amongst eachother [sic] and also everyone was looking out for the police who were just doing their jobs.
>
> *******
>
> I didn't break anything and **I was tear gassed repeatedly** so yes the news especially today was just really deceiving ... **the only thing <u>I witnessed</u> that I personally just didn't feel right about was breaking down doors and busting through windows of the Capitol Building** but even then no one intended on hurting anyone.

6

*Instant message Rutledge sent on January 6, 2021 at approximately 8:57 PM* (emphasis added)

Nonetheless, at approximately 3:12 PM, The Defendants breached the U.S. Capitol Building through the Senate Wing door, an area with a blaring alarm and broken windows that rioters were climbing through.



**Image 7 depicts defendants W. Bostic (circled in red), K. Bostic (circled in yellow), and Rutledge (circled in blue) breaching the Capitol Building through the Senate Wing door at approximately 3:12 PM**

Surely, as the spouse of a police officer, Rutledge knew that entering a building which had been breached by individuals who "broke down doors and bust[ed] through windows" was not only illegal, but would hinder the officers who had tried to prevent access to the Capitol. Although Rutledge claimed that she entered the building to find the fourth person in her group, she also acknowledged that when she entered the Capitol she also felt "sympathetic to those surrounding me who questioned the results of the election." Further, Rutledge claimed that they "decided to not look inside the building any further for our friend and left the vestibule approximately 3-4 minutes after entering." ECF 88, Presentence Investigation Report, ¶ 37.

During the time the Defendants were in the Capitol, they appeared to ensure that their time in the Capitol was memorialized by taking several photos while they were in the Senate Wing.

**Image 8**                                    **Image 9**



*Images 8 and 9 depict Defendants W. Bostic (circled in red), K. Bostic (circled in yellow), and Rutledge (circled in blue) in the Senate Wing with other rioters taking photos.*

After taking photos, the trio left the Capitol Building through the Senate Wing door at approximately 3:16 PM. The group found their friend, who apparently did not go into the Capitol building, went to their car, and drove back to their homes in Virginia.  ECF 88, ¶ 37.

*Social Media Posts*

On January 6, 2021, Rutledge commented on the Defendants' time at the Capitol. Notably, she celebrated making it inside of the Capitol, but not for looking for the fourth member of their party, the excuse she provides for entering the building. Specifically, she stated, "[a]fter miles and miles of walking and climbing and climbing some more we made it inside the capitol building. What an experience for the books".



***Image 10 is a post that Rutledge made to Facebook commenting on the defendant's breach of the Capitol.***

On the night of January 6th, a friend texted Rutledge and asked, "Hey lady!  I see you were "boots in the ground" in DC today.  I have a question... As the media obviously spews their own agenda on what they want us to believe.  I'm curious about facts from someone there.  You don't have to answer... But I'd rather ask someone who was there than believe the media." In a long response, Rutledge answered as follows:

> More than happy to answer that!! I'm so irritated bc I said to my sister when we began approaching the capitol building and everyone **started climbing over the**

**wall** that they were going to bastardize this on the news ... and sure enough they did ... Everyone was very kind and helpful to each other especially when it came to helping out the elderly who were **tear gassed and flash banged** amongst the crowds. The camaraderie was amazing however the media is only showing tiny clips of what they want you to see . When walking back to the car we could hear everyone's conversations around us saying the same thing about how there was absolutely no violence other than when **they broke the windows to get inside of the capital building** but no violence amongst eachother and also everyone was looking out for the police  who were just doing their jobs. I do know there was one guy in particular who kept encouraging to push back at the police and everyone was reminding him that's not who we are and what we represent ... but then you flip on the news and it's nothing but headlines referring to us as terrorists and extremists. It's even hard for me to get on Facebook bc I see so many posts from people who were not here in DC today saying that bc of white privilege there was no **tear gas or rubber bullets or enough policing and all of that is a complete lie** ... I didn't break anything and **I was tear gassed repeatedly** so yes the news especially today was just really deceiving ... the only thing **I witnessed** that I personally just didn't feel right about was **breaking down doors and busting through windows of the Capitol Building** but even then no one intended on hurting anyone .I hope that gives you kind of an idea and I apologize for the book 😊

******

I thought we were just going to stand around the building but then they started **trying to get in to the building I guess to further make their point since Congress** was sitting just inside[.]

*Rutledge's Instant message exchange with a friend on January 6, 2021. (emphasis added)*

The next day, Rutledge took to Instagram to cast blame for the riot on Antifa, rather than herself and her fellow rioters, ignoring that she witnessed rioters "breaking down doors and busting through windows of the Capitol Building." She stated, "[t]he fake news will say we were acting extreme and bringing violence when we all know that antifa was blended amongst the crowd. The fake news will say there was no tear gas and rubber bullets when we all know that couldn't be further from the truth."

10

*The Charges and Plea Agreement*

On October 13, 2021, the United States charged Rutledge by criminal complaint with Entering or Remaining in any Restricted Building or Grounds in violation of 18 U.S.C. §§ 1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2), Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D), and Parading Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G).  On October 12, 2021, the FBI contacted Rutledge and informed her that a warrant was issued for her arrest. The next day, Rutledge surrendered to the FBI's Chesapeake, Virginia office, but refused to interview with the FBI.

On June 6, 2022, the United States charged Rutledge by a 4-count Information with violating 18 U.S.C. 1752 and 40 U.S.C. 5104. On October 27, 2022, pursuant to a plea agreement, Rutledge pleaded guilty to Count 4 of the Information, charging her with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, Defendant agreed to pay $500 in restitution to the Architect of the Capitol.

## III.    Statutory Penalties

Rutledge now faces sentencing on a single count of violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of her plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

## IV.     Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Some of those factors include: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, *id.*; the need for the sentence to reflect the seriousness of the offense and promote respect for the law, § 3553(a)(2)(A); the need for the sentence to afford adequate deterrence, § 3553(a)(2)(B); and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. § 3553(a)(6). In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 90 days home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution.

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40 (TNM), 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Rutledge's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Rutledge, the absence of violent or destructive acts is not a mitigating factor. Had Rutledge engaged in such conduct, she would have faced additional criminal charges.

One of the most important factors is that Rutledge witnessed violence at the Capitol; she was teargassed outside, heard the police's flash bangs, witnessed rioters break windows at the

Senate Wing, but still entered the Capitol Building. Rutledge entered and remained in the building and took photos with her father and sister. The Defendants stayed in the Capitol for less than ten minutes, which is a mitigating factor. Offsetting that, though, is Rutledge's use of social media to downplay the violence that she witnessed and her claims that the media was inaccurately reporting the violence there.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 90 days' home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution.

### B. Rutledge's History and Characteristics

As set forth in the PSR, Rutledge's criminal history consists of 2016 convictions arising from possession of marijuana for which she was sentenced to 2 days in custody and a $100 fine. ECF 88, ¶ 41. Rutledge is unemployed and is married to a police officer. *Id*. at 51, 59.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Joshua Bustle and Jessica Bustle*, 21-cr-238-TFH, Tr. 08/24/21 at 3 ("As to probation, I don't think anyone should start off in these cases with any presumption of probation. I think the presumption should be that these offenses were an attack on our democracy and that jail time is usually -- should be expected") (statement of Judge Hogan).

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this

defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President.

The gravity of these offenses demands deterrence. *See United States v. Mariposa Castro*, 1:21-cr-00299 (RBW), Tr. 2/23/2022 at 41-42 ("But the concern I have is what message did you send to others? Because unfortunately there are a lot of people out here who have the same mindset that existed on January 6th that caused those events to occur. And if people start to get the impression that you can do what happened on January 6th, you can associate yourself with that behavior and that there's no real consequence, then people will say why not do it again."). This was not a protest. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights.") (statement of Judge Moss). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Rutledge was not deterred from entering the Capitol, despite being teargassed, and hearing the flash bangs that the police employed. On the day of the riot, she celebrated breaching the Capitol Building with her family, calling it "an experience for the books."  This shows a total disregard for the illegality that occurred at the Capitol, and suggests that if provided the opportunity, the defendant would repeat her actions. Moreover, the defendant has shown no remorse for her actions. A sentence of home-detention, as part of a term of probation is warranted to deter this conduct.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Rutledge based on her own conduct and relevant characteristics, but should give substantial weight to the context of her unlawful conduct: her participation in the January 6 riot.

Rutledge has pleaded guilty to Count 4 of the Second Superseding Information, charging her with Parading Demonstrating, or Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

Guidelines do not apply, U.S.S.G. 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C.A.  § 3553(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Section 3553(a)(6) does not limit the sentencing court's broad discretion under 18 U.S.C. § 3553(a) "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). Although unwarranted disparities may "result when the court relies on things like alienage, race, and sex to differentiate sentence terms," a sentencing disparity between defendants whose differences arise from "legitimate considerations" such as a "difference[] in types of charges" is not unwarranted. *United States v. Bridgewater*, 950 F.3d 928, 936 (7th Cir. 2020).

"Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006). "[A] defendant cannot rely upon § 3553(a)(6) to seek a reduced sentence designed to lessen disparity between co-defendants' sentences." Consequently, Section 3553(a)(6) neither prohibits nor requires a sentencing court "to consider sentencing disparity among codefendants." *Id.* Plainly, if Section 3553(a)(6) is not intended to establish sentencing uniformity among codefendants, it cannot require uniformity among all Capitol siege defendants charged with petty offenses, as they share fewer similarities in their offense conduct than codefendants do. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Tr. at 48-49 ("With regard to the need to avoid sentence disparity, I find that this is a factor, although I have found in

the past and I find here that the crimes that occurred on January 6 are so unusual and unprecedented that it is very difficult to find a proper basis for disparity.") (statement of Judge Chutkan)

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id.* at 1095. It follows that a sentencing court in a Capitol siege petty offense case is not constrained by sentences previously imposed in other such cases. *See United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out,

you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. For that reason, a permissible sentence imposed for a petty offense is unlikely to cause an unwarranted disparity given the narrow range of permissible sentences. The statutory range of for a petty offense is zero to six months. Given that narrow range, a sentence of 90 days home detention as part of a 36-month term of probation, will not create an unwarranted disparity with a sentence of probation only, at the bottom.   *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr.   at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson); *United States v. Dresch*, D.D.C. 21-cr-71 (ABJ), Aug. 4, 2021 Sent. Hrg. Tr. at 34 ("Ensuring that the sentence fairly reflects where this individual defendant falls on the spectrum of individuals arrested in connection with the offense has largely been accomplished by the offer of the misdemeanor plea because it reduces his exposure substantially and appropriately.") (statement of Judge Berman Jackson); *United States v. Peterson*, D.D.C. 21-cr-309, Sent. Hrg. Tr. at 26 (statement of Judge Berman Jackson) (similar).

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, two cases are comparable. In *United States v. Joshua Bustle and Jessica Bustle*, 1:21-cr-238 (TFH), Joshua Bustle (Bustle) drove from Virginia (like Rutledge) with his wife and they reached the Capitol Building through a second floor door to the Rotunda. ECF 38,

Government's Sentencing Memorandum, at 4. That door had been breached by rioters about 20 minutes before the Bustles entered, but there were clear signs of damage in the area that the defendants entered as the doors' windows were smashed. The couple remained inside the Capitol for approximately 20 minutes and left. *Id*. at 2, 5. So to, Rutledge breached the Capitol Building through the Senate Wing, where windows were broken, and alarms blared. She also saw rioters hanging on ledges of the building before she entered, and she was tear gassed with her sister outside of the building. Bustle had no social media related to the riot. *Id*. at 5. Rutledge did, and she publicly celebrated breaching the Capitol building with her family and cast blame at others (e.g. Antifa) for the violence and property destruction. All these aggravating factors warrant a greater sentence than Bustle's, who was sentenced to 30 days' home-detention as part of a 24-month term of probation.

In *United States* v. *Fox*, 1:21-cr-435 (BAH), Fox breached the Capitol by climbing through one of the Senate Wing windows, the area where Rutledge entered. Fox remained in the Capitol for less than two minutes, while Rutledge remained inside for four minutes. Both Fox and Rutledge, however, did not leave until they took photos while in the Senate Wing. Fox also admitted that he witnessed rioters breaking a window at the Senate Wing, and he posted that image to Facebook. ECF 33 (Government's Sentencing Memorandum) at 6. Fox also failed to express remorse for his actions, declaring that in terms of breaching the Capitol, "I'd do it again." *Id*. at 10. Rutledge witnessed the rioters' violence and property destruction. She admitted that to a friend through a text exchange, but used social media to downplay the violence that she witnessed. Fox was sentenced to 60 days' home detention as part of a term of 36 months' probation, and a $2,500 fine. Rutledge's actions are comparable to Fox's and warrant a similar sentence.

19

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.      Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Defendant to 90 days home detention as part of a 36-month term of probation, 60 hours of community service, and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on her liberty as a consequence of her behavior, while recognizing her acceptance of responsibility for her crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   s/ Anthony L. Franks
Assistant United States Attorney
Bar No. 50217M O
601 D Street, N.W
Washington, DC 20530
anthony.franks@usdoj.gov
(314) 539-3995

## **CERTIFICATE OF SERVICE**

On this 15th day of March 2023, a copy of the foregoing was served upon all parties listed on the Electronic Case Filing (ECF) System.

s/ Anthony L. Franks
Assistant United States Attorney
Bar No. 50217M O
601 D Street, N.W
Washington, DC 20530
anthony.franks@usdoj.gov
(314) 539-3995